UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



WALTER BALKUM,

        Plaintiff,

    v.

JOHN P. LEONARD, TOM W.
TURNBULL, K. HULETT, and C.O.
MEEKUS,

        Defendants.

**DECISION AND ORDER**

6:14-CV-06352 EAW

On June 25, 2014, Plaintiff Walter Balkum ("Plaintiff"), an inmate formerly incarcerated at the Great Meadow Correctional Facility, filed this *pro se* action seeking relief under 42 U.S.C. § 1983, alleging that on June 17, 2011, Defendants Leonard, Hulett, Meekus, and Turnbull "physically attacked" Plaintiff while Plaintiff was in full mechanical restraints, causing physical, mental, and emotional injuries. (Dkt. 1). A jury trial in Plaintiff's case is set to commence on January 27, 2020. (Dkt. 81). Presently before the Court is Defendants' motion *in limine* requesting for the Court to instruct the jury that, as a matter of fact and law, Plaintiff initiated the attack against Defendants, and for the Court to instruct Plaintiff that he cannot testify to the contrary. (Dkt. 83). For the following reasons, Defendants' motion *in limine* is granted.

In his Complaint, Plaintiff contends while he was on a bus parked at the Lakeview Shock Incarceration Correctional Facility, he was "without provocation . . . physically

attacked by punches and kicks" by Defendants. (Dkt. 1 at 6). On December 30, 2019, and January 14, 2020, Defendants submitted documents showing that following the incident, Plaintiff received a misbehavior report for violent conduct and assault on staff, and after a hearing was found guilty and sentenced to eight months and five days of SHU time, and a loss of 12-months good-time credit. (*See* Dkt. 83; Dkt. 87). The determination of guilt at the August 29, 2011, hearing was expressly based on a finding that Plaintiff was the initial aggressor. (*See* Dkt. 87 at 8).

At the pretrial conference on January 17, 2020, Plaintiff represented that the 12-month loss of good-time credit was only a recommendation, and that the loss of that good time had been subsequently restored to him, although he did not have documents in his possession showing as much. On January 21, 2020, counsel for Defendants submitted documents and affidavits showing that the recommended 12-month loss of good time was implemented and never overturned or reversed. (Dkt. 91). Although Plaintiff had 6 months and 19 days' worth of good time restored on April 25, 2016,[1] that "determination was not a restoration of 6 months from any specific hearing or violation, and did not undo or reverse the guilty finding or discipline from any violation." (*Id.* at 6). Instead, Plaintiff's good time was restored because he completed an Adult Substance Abuse Treatment program

---

[1] The record shows that Plaintiff lost a number of other good-time credits from incidents unrelated to the events underlying this lawsuit that were all reviewed by the Time Allowance Committee at the same time and collectively assessed. (Dkt. 91 at 9). As a result, even though some of Plaintiff's good time was restored, it cannot be attributed to any single loss of good-time credits, let alone the loss from the August 29, 2011, hearing at issue here.

and Aggression Replacement Training program as was directed by his previous Time Allowance Committee review. (*Id.* at 8, 15). Because the August 29, 2011, hearing resulted in a loss of good-time credits that has never been overturned or reversed, Defendants argue that Plaintiff is barred from presenting his version of events by *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997).

In *Heck*, the Supreme Court held that a § 1983 action seeking money damages is not cognizable if a decision in the plaintiff's favor would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487. The Supreme Court later made clear in *Edwards* that *Heck*'s favorable termination rule applies to § 1983 challenges made to procedures in disciplinary proceedings that deprive a prisoner of good-time credits. *See Edwards*, 520 U.S. at 648.

In *Shapard v. Attea*, 710 F. App'x 15 (2d Cir. 2017), the Second Circuit considered the impact of *Heck* where the plaintiff asserted an excessive force claim, but his version of events was inconsistent with an underlying criminal conviction. In *Shapard*, the plaintiff claimed that three officers, including an officer named John Attea had "punched and kicked him and beat him with a baton." *Id.* at 16. The plaintiff had pled guilty to a criminal charge of second degree assault in connection with the incident and had admitted to injuring Attea. *Id.* at 17. The district court granted summary judgment on the plaintiff's excessive force claims based on *Heck*. *Id.* The Second Circuit reversed, finding that the plaintiff's claims

did not "depend on the invalidity of his assault conviction" and that even though the plaintiff contended he had not assaulted Attea, he also contended that the amount of force used by the officers was excessive regardless of whether or not he was the initial aggressor. *Id.* at 17-18. The Second Circuit explained that "the elements of excessive force and second degree assault under [the New York Penal Law] are not incompatible," and that rather than dismissing the plaintiff's claims, the district court should have "take[n] appropriate steps to prevent [the plaintiff] from disputing the assault, including limiting his testimony and instructing a jury that he assaulted Officer Attea." *Id.* at 18.

Courts in this Circuit have applied the rule established in *Shapard* to cases involving disciplinary hearings that resulted in a loss of good-time credits. *See Adams v. O'Hara*, No. 9:16-CV-527 GTS ATB, 2018 WL 5728040, at *8 (N.D.N.Y. July 24, 2018) ("Accordingly, even if plaintiff had punched defendant O'Hara or elbowed defendant Kirkwood, the defendants could have conceivably used excessive force in responding to the incident. Thus, plaintiff's excessive force claims, and the related failure to protect claims, would not be barred by *Heck*. . . . [T]he issue can be addressed by the court if the matter goes to trial, by limiting plaintiff's testimony and giving appropriate jury instructions"), *report and recommendation adopted*, 2018 WL 4590015 (N.D.N.Y. Sept. 25, 2018); *Wynter v. Ramey*, No. 9:11-CV-0257, 2013 WL 5465343, at *8 (N.D.N.Y. Sept. 30, 2013) ("It may well be, as the hearing officer found, that plaintiff initiated the confrontation at issue by shoving defendant Gille. That finding, as well as the other determinations rendered by the hearing officer, however, are not necessarily incompatible

with a finding that defendants . . . reacted to [the plaintiff]'s initial conduct by beating him out of malice, or with sadistic intentions.").

As in *Adams* and *Wynter*, the Court finds that in this case, the holdings of *Heck*, *Edwards*, and *Shapard* considered in combination require a finding that Plaintiff cannot testify before the jury that he was not the initial aggressor. If the jury were to accept such a version of events, it would call into question the validity of the disciplinary determination that resulted in the loss of good-time credits, which is forbidden by *Heck* and *Edwards*.

The Court notes that this is a "mixed sanctions" case, in which Plaintiff was subject to both the loss of good-time credits and other sanctions. In *Peralta v. Vasquez*, 467 F.3d 98 (2006), the Second Circuit found that in cases where "a prisoner who was subject to a single disciplinary proceeding that gave rise to sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement," that prisoner "can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement.*" *Id.* at 104. This allowance for forfeiture of duration claims in procedural due process cases brought pursuant to § 1983 has come to be known as a "*Peralta* waiver." In other words, if a plaintiff forever abandons any claims with respect to the *duration* of his confinement that arise out of the disciplinary proceeding challenged, he may pursue a procedural due process claim with respect to that disciplinary proceeding to challenge the *conditions* of his confinement.

Here, Plaintiff has not asserted a procedural due process claim, nor has he executed a *Peralta* waiver. Thus, the *Peralta* waiver exception is not applicable. In both *Adams* and *Wynter*, the courts found that the *Peralta* waivers did not apply to the excessive force claims and that the plaintiffs could only testify to the excessive force that was used after their initiation of the confrontation. *See Wynter*, 2013 WL 5465343, at *8; *Adams v. O'Hara*, 2018 WL 5728040, at *8. The Court agrees with the *Adams* and *Wynter* courts and finds that even if Plaintiff was to execute a *Peralta* waiver, that would not permit him to testify that he was not the initial aggressor.

For these reasons, the Court grants Defendants' motion *in limine* (Dkt. 83). During trial, the Court will prohibit Plaintiff from testifying that Defendants were the initial aggressors or that Plaintiff was acting in self-defense, will instruct the jury to ignore any statements by Plaintiff or any witness to the contrary, and will instruct the jury that Plaintiff initially assaulted Officer Leonard. These precautions will adequately protect against any potential violation of *Heck* or *Edwards*. However, Plaintiff is not barred from testifying as to Defendants' use of force after the initial confrontation.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

DATED:   January 23, 2020
         Rochester, New York